1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Ahmed Mohammed Ahmed ALI; E.A., a minor; on behalf of themselves as individuals and on behalf of others similarly situated,<br><br>    Plaintiffs-Petitioners,<br><br>vs.<br><br>Donald TRUMP, President of the United States of America; U.S. DEPARTMENT OF STATE; Tom SHANNON, Acting Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence,<br><br>    Defendants-Respondents. | Case No.: --<br><br>**COMPLAINT—CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF** |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 0

**INTRODUCTION**

1.      Plaintiffs are two United States citizens, one lawful permanent resident, and three nationals of three predominantly Muslim countries who seek to be reunited and live as families in the United States. Like thousands before them, Plaintiffs have diligently pursued the lengthy and rigorous immigrant visa process, which entails, inter alia, filing immigrant visa petitions and immigrant visa applications, paying hundreds of dollars in filing fees, undergoing security screenings and medical examinations, and attending an interview before a consular officer.

2.      The unlawful and discriminatory executive order issued by President Donald Trump on January 27, 2017 has shattered Plaintiffs' lives and their prospects for being reunited as well as the lives and reunification prospects of the scores of similarly situated families and individuals they seek to represent through this action. This far-reaching executive order contains an array of problematic provisions with drastic consequences.

3.      At issue in this suit is Section 3 of the executive order, through which President Trump abruptly suspended immigrant visa processing for nationals of seven predominantly Muslim countries, and prohibited their entry into the United States.

4.      Section 3 violates Congress' clear intent in 8 U.S.C. § 1152(a)(1) to prevent discrimination in the issuance of immigrant visas "because of the person's race, sex, nationality, place of birth, or place of residence." It also violates Plaintiffs' constitutionally protected rights to family, marriage, and equal protection under the law.

5.      Plaintiffs and prospective class members seek this Court's intervention to cease application of Section 3 of the executive order to persons in the immigrant visa process—U.S. citizens and lawful permanent residents who have successfully petitioned for the immigration of a family member and nationals of the seven designated countries who have applied for visas—to prevent ongoing and future harm to these individuals. Such intervention is needed to protect the integrity of the United States' immigrant visa process.

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 1

## JURISDICTION AND VENUE

6.     This case arises under the United States Constitution; the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq.; and the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq.

7.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States, and the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361. Declaratory judgment is sought pursuant to 28 U.S.C. §§ 2201-02. The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States or agencies thereof acting in their official capacities. A substantial part of the events or omissions giving rise to the claims occurred in this district, and Plaintiffs Juweiya Ali and Reema Dahman reside in this district, as do many putative class members. In addition, no real property is involved in this action.

## PARTIES

9.     Plaintiff Juweiya Abdiaziz Ali is a U.S. citizen who resides in Seattle, Washington.

10.    Plaintiff A.F.A. is her six-year-old son. He is a citizen and resident of Somalia.

11.    Plaintiff A.F.A. has a pending immigrant visa application based on Plaintiff Ali's approved family-based immigrant visa petition for him.

12.    Plaintiff Reema Khaled Dahman is Syrian citizen and a lawful permanent resident of the United States who resides in Seattle, Washington.

13.    Plaintiff G.E. is her 16-year-old son. He is a citizen and resident of Syria.

14.    Plaintiff G.E. has a pending immigrant visa application based on Plaintiff Dahman's approved family-based immigrant visa petition for him.

15.    Plaintiff Ahmed Mohammed Ahmed Ali is a U.S. citizen who resides in Los Banos, California.

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 2

16.     Plaintiff E.A. is his 12-year-old daughter. She is a citizen of Yemen currently located in Djibouti.

17.     Plaintiff E.A. has an approved immigrant visa based on Plaintiff Ali's approved family-based immigrant visa petition for her.

18.     Defendant Donald Trump is the President of the United States. He is sued in his official capacity.

19.     Defendant U.S. Department of State (DOS) is a cabinet department of the United States federal government. DOS has an integral role in the immigrant visa application and adjudication process.

20.     Defendant Tom Shannon is the Acting Secretary of State and as such is the chief foreign affairs adviser to the President. His responsibilities include administering DOS and supervising the administration of U.S. immigration laws abroad. He is sued in his official capacity.

21.     Defendant U.S. Department of Homeland Security (DHS) is a cabinet department of the United States federal government. DHS has an integral role in the immigrant visa application and adjudication process.

22.     Defendant John F. Kelly is the Secretary of DHS and is responsible for the administration and enforcement of the INA and oversight of all operations of DHS. He is sued in his official capacity.

23.     Defendant United States Citizenship and Immigration Services (USCIS) is a component of DHS responsible for, inter alia, adjudicating immigrant visa petitions filed on behalf of foreign nationals seeking to immigrate to the United States. USCIS play an integral role in the immigrant visa application and adjudication process.

24.     Defendant Lori Scialabba is the Acting Director of USCIS and is responsible for its oversight and administration, including responsibility for USCIS' role in the immigrant visa application and adjudication process.  She is sued in her official capacity.

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 3

25.     Defendant Office of Director of National Intelligence is assigned responsibility under the Executive Order to consult with DHS, to determine which countries will be encompassed by the Executive Order.

26.     Defendant Michael Dempsey is the Acting Director of National Intelligence (DNI), and is responsible for its oversight and administration, including responsibility for DNI's role in vetting countries targeted by the Executive Order. He is sued in his official capacity.

## BACKGROUND

27.     The INA sets forth a rigorous multi-step application process for those seeking to obtain an immigrant visa to the United States.  *See generally* 8 U.S.C. §§ 1153 and 1154.

28.     As an initial step, the government must receive and approve a visa petition.  A qualifying U.S. citizen family member or employer must submit a visa petition on behalf of a foreign national beneficiary and pay an accompanying filing fee to USCIS, a subdivision of DHS, using either Form I-130 (Petition for Alien Relative), or Form I-140 (Petition for Alien Worker).  To be eligible to submit a family-based visa petition, the petitioner's relationship to the beneficiary must fall within a prescribed statutory classification. In order to qualify for an employment-based visa, the beneficiary must meet a variety of requirements, generally including qualification for the job that she seeks and a lack of U.S. workers available to take that job.

29.     Certain other limited categories of noncitizens are eligible to immigrate pursuant to legislation, including Iraq translators who have supported U.S. troops abroad or worked on behalf of the U.S. government in Iraq. These individuals apply for an immigrant visa by filing Form I-360 (Petition for Amerasian, Widow(er), or Special Immigrant) with USCIS.

30.     If USCIS approves the visa petition, the beneficiary of the petition is eligible to begin the process to apply to immigrate as soon as a visa number becomes available. If a visa number is immediately available, she may begin the process of applying for the immigrant visa immediately; if there is a backlog in the visa category in which she falls, she may wait months or years for a visa number to become immediately available.  The length of the wait depends on

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 4

factors such as the type of petition, the country of nationality, and/or the family or employment category for which a visa number is sought.

31.     After USCIS approves an immigrant visa petition, the immigrant visa beneficiary (i.e., the immigrant visa applicant) faces additional fees, additional applications, and screening by the National Visa Center (NVC), a component of DOS. Once the additional fees are paid, the immigration visa applicant must submit Form DS-260 (Immigrant Visa Electronic Application), and, in many cases, Form I-864 (Affidavit of Support).  DOS and DHS then conduct a variety of security checks regarding the applicants' background and any possible criminal history.

32.     Immigrant visa applicants also must undergo a medical examination by an Embassy-approved physician.

33.     After all necessary paperwork and agency screening of the beneficiary is completed, the U.S. Embassy or consulate will issue an interview notice, requiring her to appear at a U.S. Embassy or consulate. At the appointment, a consular officer interviews the immigrant visa applicant and reviews the wide range of supporting documents, including documentation of her medical exam, identity documents and documents establishing her visa eligibility, a police certificate, and any military or prison records.

34.     In order for a consular officer to grant an immigrant visa application, the officer must establish that the applicant is eligible for a visa and is not barred by various grounds of inadmissibility set forth in the INA, including national security-related grounds. *See, e.g.*, 8 U.S.C. § 1182(a)(3).  Among the tools available to consular officers in making these determinations are Security Advisory Opinions (SAOs), a process through which a noncitizen's information is referred to a variety of U.S. intelligence and law enforcement agencies for assessment. Both consular officers and DHS employees stationed at U.S. Embassies and Consulates pursuant to Section 428 of the Homeland Security Act of 2002 may request that an SAO be submitted. A consular visa is not issued until the SAO process is completed.

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 5

35.     If the consular officer approves the immigrant visa application, the person is presented with an immigrant visa packet which they must carry and present upon arrival in the United States.  At the time the individual receives the packet, she becomes an immigrant visa holder and must enter the United States within 6 months of the date her visa is issued.

36.     The individual presents the visa packet to a Customs and Border Protection inspecting officer at a port of entry. Upon admission to the United States, the immigrant visa holder becomes a lawful permanent resident (LPR).

37.     Other noncitizens may qualify for an immigrant visa through such programs as the diversity visa program, and special immigrant visa programs.  These individuals follow a similar application, screening, adjudication and admission process.

## FACTUAL ALLEGATIONS

### President Trump's January 27, 2017 Executive Order

38.     On January 20, 2017, Donald Trump was inaugurated as the forty-fifth President of the United States.

39.     One week later, on January 27, President Trump signed an executive order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States," (EO).  The order is attached as Exhibit A.

40.     Claiming a need to "protect Americans" from the threat of terrorism and blaming  DOS policy for the September 11, 2001 tragedies (Sections 1 and 2), the EO orders the immediate implementation of major changes to the ability of foreign nationals to seek and obtain admission to the United States.  The EO impacts all major categories of foreign nationals who seek admission to the United States: immigrants, nonimmigrants, and refugees.  Among other things, the EO directs federal agencies to develop screening standards for all immigration benefits to identify individuals who enter fraudulently intending to cause harm (Section 4); suspends refugee processing for 120 days, halts the processing and admission of Syrian refugees indefinitely, and reduces the number of refugee admissions from 110,000 to 50,000 in fiscal year

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 6

2017 (Section 5); orders the heads of executive departments to consider rescinding their exercise of discretionary authority to waive inadmissibility under 8 U.S.C. § 1182(a)(3) (Section 6); directs agencies to expedite the completion and implementation of a biometric entry-exit system which includes reporting requirements (Section 7); and suspends the State Department's authority to waive visa interviews unless a person is subject to a specific statutory exemption (Section 8).

41.     Section 3, entitled "Suspension of Issuance of Visas and Other Immigration Benefits to Nationals of Countries of Particular Concern" is at issue in this lawsuit.  Sections 3(a) and (b) order DHS, in consultation with DOS and the Director of National Intelligence (DNI), to review and submit a report to the President on "the information needed from any country to adjudicate any visa, admission, or other benefit under the INA (adjudications)" to verify an applicant's identity and assess his or her threat to security or public-safety.

42.     In Section 3(c), the President, pursuant to 8 U.S.C. 1182(f), bans all persons from countries referred to in 8 U.S.C. § 1187(a)(12) from entering the United States on an immigrant or nonimmigrant visa for 90 days, with limited exceptions not relevant here.  These countries are Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen.

43.     Sections 3(d)-(f) set forth a timetable for identifying countries that do not supply the information on foreign nationals included in the DHS report to the President and requesting their compliance.  For those that fail to comply, the President may impose a ban on the entry of nationals of that country until such time as the country complies.  At any time, DOS or DHS may suggest that the President impose similar treatment on additional countries.

### Resulting Chaos

44.     Immediately following issuance of the EO, hundreds of persons involved in the immigrant visa process were harmed.  Plaintiffs Juweiya Ali, A.F.A., Dahman, and G.E., along with many others, had already begun the visa application process; they faced the immediate suspension of immigrant visa processing.  Plaintiff E.A. and many others had been issued a visa

and were en route or making plans to travel to the United States; they were now banned from entering the United States notwithstanding their valid visas.

45.    The DOS and some U.S. embassies and consulates abroad posted the following notice online, advising immigrant visa applicants that visa issuance had been suspended and visa interviews cancelled.

Urgent Notice: Executive Order on Protecting the Nation from Terrorist Attacks by Foreign Nationals

JANUARY 27, 2017

**Urgent Notice**

Per the Executive Order on Protecting the Nation from Terrorist Attacks by Foreign Nationals signed on January 27, 2017, visa issuance to nationals of the countries of Iraq, Iran, Libya, Somalia, Sudan, Syria and Yemen has been suspended effective immediately until further notification. If you are a citizen of one of these countries, please do not schedule a visa appointment or pay any visa fees at this time. If you already have an appointment scheduled, please **DO NOT ATTEND**. You will not be permitted entry to the Embassy/Consulate. We will announce any other changes affecting travelers to the United States as soon as that information is available.

*See* https://travel.state.gov/content/visas/en/news.html; *see also* https://sudan.usembassy.gov/, https://iraq.usembassy.gov/pr_012817.html.

46.    In addition, some U.S. embassies and consulates have sent similar notifications to applicants.  For example, upon information and belief, the U.S. Embassy Baghdad sent the following notice to an immigrant visa applicant again advising both that visa processing has been suspended and that all previously-issued visas have been revoked; it reads:

Dear applicant,

*Urgent Notice: Per U.S. Presidential Executive Order signed on January 27, 2017, visa issuance to aliens from the countries of Iraq, Iran, Libya, Somalia, Sudan, Syria and Yemen has been suspended effective immediately until further notification.  If you are a national, or dual national, of one of these countries, please do not schedule a visa appointment or pay any visa fees at this time. If you*

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 8

*already have an appointment scheduled, please DO NOT ATTEND your appointment as we will not be able to proceed with your visa interview.  Please note that certain travel for official governmental purposes, related to official business at or on behalf of designated international organizations, on behalf of the North Atlantic Treaty Organization, or by certain officials is not subject to this suspension.  Please continue to monitor the Embassy Baghdad website https://iraq.usembassy.gov/ and www.travel.state.gov for further update.*

***Please be advised that all previously-issued visas to the United States for Iraqi nationals currently outside the United States have been revoked.  You are therefore advised not to purchase tickets or to attempt to travel to the United States until further notice.***

*Regards,*
*U.S. Embassy Baghdad*

47.    An untold number of individuals who had already received visas have been left unable to travel.  Many, like Plaintiffs Ahmed Ali and his daughter E.A., had booked travel to the United States and were stopped in transit, and others had already arrived and were refused entry into the country and forced to return.

### Animus Directing President Trump's January 27, 2017 Executive Order

48.    Through repeated statements, President Trump has made clear his intent to target the admission of foreign nationals based upon their Muslim religion.  For example, as a candidate, President Trump championed an explicit Muslim ban, "calling for a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on." Donald J. Trump, *Donald J. Trump Statement On Preventing Muslim Immigration* (Dec. 7, 2015), https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration.

49.    Rudolph Giuliani, President Trumps' advisor on cybersecurity, confirmed that the current executive order was intended to be a "legal" ban on Muslims. *See* Amy B. Wang, Trump asked for a 'Muslim ban,' Giuliani says — and ordered a commission to do it 'legally', Wash. Post (Jan. 29, 2017) ("So when [Trump] first announced it, he said, 'Muslim ban.' He called me up. He said, 'Put a commission together. Show me the right way to do it legally.'").

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 9

50.     The EO exempts only Christian refugees from the ban imposed on the seven Muslim-majority countries. *See* Ex. A, E.O., at Section 5(b); Michael D. Shear & Helene Cooper, Trump Bars Refugees and Citizens of 7 Muslim Countries, N.Y. Times (Jan. 27, 2017) ("[President Trump] ordered that Christians and others from minority religions be granted priority over Muslims.").

## PLAINTIFFS' ALLEGATIONS

### *Plaintiffs Juweiya Abdiaziz Ali and her son A.F.A.*

51.     Plaintiff Juweiya Abdiaziz Ali is a 23-year-old U.S. citizen who resides in Seattle, Washington.

52.     Ms. Ali was born in Somalia and came to the United States as a child.

53.     She derived U.S. citizenship on August 31, 2010 when her mother became a U.S. citizen.

54.     On August 12, 2016, Ms. Ali filed a family-based immigrant visa petition (Form I-130) for her son, Plaintiff A.F.A., with USCIS, along with the then requisite $420.00 filing fee.

55.     A.F.A. is a 6-year-old citizen and resident of Somalia, where he lives with his grandmother.

56.     On December 21, 2016, USCIS approved the immigrant visa petition Ms. Ali filed on behalf of A.F.A. and his case was subsequently transferred to the National Visa Center ("NVC") for the processing of an immigrant visa as a child of a U.S. citizen (IR-2).

57.     On January 17, 2017, the NVC processed Ms. Ali's payment of the requisite $325 for the Immigrant Visa Application Processing Fee, along with the requisite $120 for the Affidavit of Support Fee.

58.     On January 20, 2017, Ms. Ali electronically submitted A.F.A.'s immigrant visa application (Form DS-260). Also on that date, she mailed all supporting documents and Request for Exemption for Intending Immigrant's Affidavit of Support (Form I-864W) to the NVC.

59.     The United States does not have an embassy or mission that processes immigrant visas in Somalia. The U.S. Embassy in Nairobi, Kenya can process and issue immigrant visas for Somalian nationals.

60.     Ms. Ali and A.F.A. are currently waiting for the U.S. Embassy in Nairobi to schedule an immigrant visa interview.

61.     Pursuant to Section 3(c) of the EO, Defendants have suspended the processing of A.F.A.'s immigrant visa interview for 90 days from the date of the order—i.e., April 27, 2017.

62.     Pursuant to Sections 3(e) and 3(f) of the EO, there is a real possibility that the United States will not permit A.F.A. to enter the United States to join his mother, Ms. Ali.

### *Plaintiffs Reema Khaled Dahman and her son G.E.*

63.     Plaintiff Reema Khaled Dahman is a 41-year-old U.S. lawful permanent resident ("LPR") who lives in Seattle, Washington.

64.     She is a Syrian citizen who became an LPR on September 18, 2012.

65.     On October 19, 2015, Ms. Dahman filed a family-based immigrant visa petition (Form I-130) on behalf of her son, Plaintiff G.E., with USCIS, along with the then requisite $420.00 filing fee.

66.     G.E. is a 16-year-old citizen and resident of Syria, where he lives with his grandmother.

67.     G.E. and his mother have not seen each other since 2012.

68.     On June 1, 2016, USCIS approved the I-130 petition Ms. Dahman filed on behalf of G.E.

69.     USCIS subsequently transferred his case to the NVC for the processing of an immigrant visa as a minor son of an LPR (F2).

70.     On September 22, 2016, the NVC processed Ms. Dahaman's payment of the requisite $325 for the Immigrant Visa Application Processing Fee, along with the requisite $120 for the Affidavit of Support Fee.

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 11

71.    On December 2, 2016, Ms. Dahman electronically submitted G.E.'s immigrant visa application (Form DS-260). Also on that date, Ms. Dahman e-mailed the NVC all civil documents and her Affidavit of Support (Form I-864).

72.    The United States does not have an embassy or mission that processes immigrant visas in Syria. The U.S. Embassy in Amman, Jordan processes and issues immigrant visas for Syrian nationals.

73.    Ms. Dahman and G.E. are currently waiting for the U.S. Embassy in Amman to schedule an immigrant visa interview.

74.    The website of the U.S. Embassy in Amman has suspended the processing of immigrant visas of Syrian nationals pursuant to Section 3(c) of the EOR, *see* https://jo.usembassy.gov/special-information-for-syrian-applicants/ (last visited Jan. 30, 2017).

75.    Pursuant to Section 3(c) of the EO, Defendants have suspended the processing of G.E.'s immigrant visa interview for 90 days from the date of the order—i.e., April 27, 2017.

76.    Pursuant to Sections 3(e) and 3(f) of the EO, there is a real possibility that the United States will not permit G.E. to enter the United States to join his mother, Ms. Dahman.

### *Plaintiff Ahmed Mohammed Ahmed Ali and his daughter E.A.*

77.    Plaintiff Ahmed Mohammed Ahmed Ali is a 38-year-old U.S. citizen ("USC") who resides in Los Banos, California.

78.    Mr. Ali was born in Yemen and became a naturalized U.S. citizen on July 19, 2010.

79.    On April 11, 2011, Mr. Ali filed a family-based immigrant visa petition (Form I-130) for his daughter, Plaintiff E.A., with USCIS, along with the then requisite $420 filing fee.

80.    Plaintiff E.A. is a 12-year-old citizen and resident of Yemen, where she had been living with her grandparents.

81.    On June 10, 2013, USCIS approved the immediate relative I-130 petition for E.A.

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 12

82.    On July 15, 2013, the NVC processed Mr. Ali's payment of the then requisite $230 for the Immigrant Visa Application Processing Fee, along with the then requisite $88 for the Affidavit of Support Fee.

83.    On August 11, 2014, Mr. Ali electronically submitted E.A.'s Immigrant Visa Electronic Application (Form DS-260). The next day, he e-mailed all civil documents and his Affidavit of Support (Form I-864) to the NVC.

84.    The NVC then forwarded the case to the U.S. Embassy in Djibouti, Djibouti for further processing and to schedule an interview.

85.    On January 22, 2017, she appeared with her father, Mr. Ali, at the U.S. Embassy in Djibouti for her interview. E.A. traveled for about 20 hours from Yemen to Djibouti. E.A. and Mr. Ali were notified that the immigrant visa was approved.

86.    E.A.'s immigrant visa was issued on January 25, 2017, and Mr. Ali and E.A. were able to pick up the physical passport with the immigrant visa on January 26, 2017.

87.    Mr. Ali and E.A.'s airline ticket cost a total of $2,032.96.

88.    On January 26, 2017, E.A. paid an additional $220 immigrant visa processing fee that USCIS required after she received her visa. *See* https://www.uscis.gov/file-online/uscis-immigrant-fee (last visited Jan. 30, 2017)

89.    On January 28, 2017, Mr. Ali and E.A. sought to board a flight from Djibouti to the United States on Ethiopian Airlines. While at the airport, Mr. Ali was told by airline officials that his daughter was not permitted to board the flight, pursuant to Section 3(c) of the EO.

90.    Mr. Ali and E.A. are currently in Djibouti.

91.    Pursuant to Sections 3(e) and 3(f) of the EO, there is a real possibility that the United States will not permit E.A. to enter the United States, along with her U.S. citizen father, to join her U.S. citizen mother and her two U.S. citizen sisters.

92.    The website of the U.S. Embassy in Djibouti has suspended the processing of immigrant visas of Yemeni nationals pursuant to Section 3(c) of the EO, *see*

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 13

https://dj.usembassy.gov/urgent-notice-per-u-s-presidential-executive-order-signed-january-27-2017/ (last visited Jan. 30, 2017).

## CLASS ALLEGATIONS

93.     Plaintiffs bring this action on behalf of themselves and all others who are similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). A class action is proper because this action involves questions of law and fact common to the class, the class is so numerous that joinder of all members is impractical, Plaintiffs' claims are typical of the claims of the class, Plaintiffs will fairly and adequately protect the interests of the class, and Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

94.     In addition to Plaintiffs A.F.A., G.E., and E.A., there are numerous other immigrant visa applicants or immigrant visa holders from Iraq, Syria, Iran, Sudan, Libya, Somalia, and Yemen. Each of these similarly situated individuals has had their immigrant visa application suspended or invalidated due to the EO.

95.     In addition to Plaintiffs Juweiya Ali, Reema Dahman, and Ahmed Ali, there are numerous others who have petitioned for family members from Iraq, Syria, Iran, Sudan, Libya, Somalia, and Yemen. Each of these similarly situated individuals is seeking to be reunited with the immigrant visa applicants who has had their immigrant visa application suspended or invalidated due to the EO.

96.     Each of these similarly situated individuals is entitled to bring a complaint for declaratory and injunctive relief to prohibit Defendants' policy, pattern, and practice of suspending immigrant visa processing and temporarily invalidating the immigrant visas.

97.     Plaintiffs seek to represent a class consisting of all nationals of countries designated by Section 3(c) of the Executive Order signed by President Trump on January 27, 2017 (currently Iraq, Syria, Iran, Sudan, Libya, Somalia, and Yemen), who have applied for or will apply for an

immigrant visa and the visa petitioners for those nationals, whose visa applications have been or will be suspended or denied, or whose immigrant visas have been or will be revoked, or who have been or will be denied the ability to travel to the United States, on the basis of the January 27, 2017 Executive Order.

98.     Plaintiffs seek to represent the class and are adequate class representatives. All Plaintiffs have been subject to harm caused by Section 3 of the EO in that the EO either has suspended the immigrant visa application process or revoked or invalidated the immigrant visa previously received.

99.     The Proposed Class is so numerous that joinder of all members is impracticable. The number of individuals who are subject to/affected by Section 3 of the EO is not known with precision by Plaintiffs, but is easily ascertainable by Defendants, as will be addressed in Plaintiffs' Motion for Class Certification.

100.    Common questions of law and fact bind the members of the Proposed Class. These include, but are not limited to: whether the EO violates the INA, the APA, and the U.S. Constitution.

101.    The claims of the named Plaintiffs are typical of the claims of the Proposed Class as a whole. Defendants have subjected and will subject class members to Section 3 of the EO absent relief by this Court.

102.    Plaintiffs know of no conflict between their interests and those of the Proposed Class. The members of the Proposed Class are ascertainable and identifiable through notice and discovery. In defending their own rights, the individual Plaintiffs will defend the rights of all class members fairly and adequately.

103.    Plaintiffs are represented in this case by counsel with deep knowledge of immigration law and extensive experience litigating class actions and complex cases. Plaintiffs' attorneys have the requisite level of expertise to adequately prosecute this case on their behalf and on behalf of the Proposed Class.

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 15

104.    Defendants have act on grounds generally applicable to each member of the Proposed Class by subjecting Plaintiffs and class members to Section 3 of the EO.

105.    A class action is superior to other methods available for the fair and efficient adjudication of this controversy because joinder of all members of the class is impracticable.

## CAUSES OF ACTION

### COUNT ONE
### Violation of the Immigration and Nationality Act and the Administrative Procedure Act

106.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

107.    Section 202(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1152(a)(1), expressly provides for the non-discriminatory issuance of immigrant visas; it mandates that, with limited exceptions not relevant here, "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."

108.    Section 1152(a)(1) was intended to protect the interests of both U.S. citizen and lawful permanent resident immigrant visa petitioners as well as immigrant visa applicants or holders.

109.    The EO discriminates against immigrant visa applicants or holders on the basis of their "nationality, place of birth, or place or residence," and therefore is discriminatory and violates 8 U.S.C. § 1152(a)(1).

110.    Defendants' actions in suspending the processing of Plaintiffs' immigrant visas, and/or invalidating or revoking already issued immigrant visas is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and without observance of procedure required by law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A)-(D).

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 16

**COUNT TWO**
**Mandamus, 28 U.S.C. § 1361**

111.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

112.    8 U.S.C. § 1152(a)(1) prohibits the government from denying issuance of immigrant visas "because of the person's race, sex, nationality, place of birth, or place of residence."

113.    Pursuant to the EO, Defendants have suspended issuance of and/or invalidated or revoked Plaintiffs' immigrant visas on the basis of their "nationality, place of birth, or place or residence."

114.    Defendants unlawful adherence to the EO—and continuing refusal to process and issue immigrant visas or treat as valid existing immigrant visas—violates the government's clear, nondiscretionary obligation to adjudicate immigrant visa applications and issue immigrant visas in a non-discriminatory manner.

**COUNT THREE**
**Violation of Fifth Amendment –Equal Protection**

115.    Plaintiffs repeat and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

116.    The Due Process Clause of the Fifth Amendment of the U.S. Constitution guarantees all individuals due process of the laws, which includes a guarantee of equal protection.

117.    Section 3 of the EO discriminates against Plaintiffs on the basis of their nationality and/or place of birth without sufficient justification, and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment.

118.    Additionally, the EO was substantially motivated by animus toward—and has a disparate effect on—Muslims, which also violates the equal protection component of the Due Process Clause of the Fifth Amendment.

**COUNT FOUR**
**Violation of the Fifth Amendment – Due Process**
**(Plaintiffs Juweiya Ali, Reema Dahman, and Ahmed Ali Against All Defendants)**

119.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

120.   The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law."

121.   Plaintiffs Juweiya Ali, Reema Dahman, and Ahmed Ali have a constitutionally protected liberty interest in their family life.

122.   At a minimum, due process protects individuals against arbitrary government action, including actions that do not adhere to the constraints that Congress has imposed or the facts may dictate.

123.   Defendants' actions in suspending the processing of their immigrant visas and in denying the validity of existing immigrant visas, taken pursuant to the EO, violate the procedural due process rights guaranteed by the Fifth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and other members of the proposed class respectfully pray that this Court grant the following relief:

a. Assume jurisdiction over this matter;

b. Certify the case as class action as proposed herein;

c. Appoint Plaintiffs as representatives of the classes;

d. Declare Section 3(c) of the Executive Order is contrary to the statute and the Constitution;

e. Issue an order enjoining Defendants from applying Section 3(c) of the Executive Order to Plaintiffs and proposed class members;

f. Award Plaintiffs' counsel reasonable attorneys' fees under the Equal Access to Justice Act, and any other applicable statute or regulation; and

g. Grant such further relief as the Court deems just, equitable, and appropriate.

Respectfully submitted this 30th of January, 2017, by:


s/*Matt Adams*
Matt Adams, WSBA No. 28287

s/*Glenda Aldana*
Glenda M. Aldana Madrid, WSBA 46987

Maria Lucia Chavez, WSBA No. 43826, *application for admission forthcoming*

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400 Seattle, WA 98104 (206) 957-8611
(206) 587-4025 (fax)


Trina Realmuto, *pro hac vice admission forthcoming*

Kristin Macleod-Ball, *pro hac vice admission forthcoming*

NATIONAL IMMIGRATION PROJECT
  OF THE NATIONAL LAWYERS GUILD
14 Beacon Street, Suite 602
Boston, MA 02108
(617) 227-9727
(617) 227-5495 (fax)

Mary Kenney, *pro hac vice admission forthcoming*

Aaron Reichlin-Melnick, *pro hac vice admission forthcoming*

Melissa Crow, *pro hac vice admission forthcoming*

AMERICAN IMMIGRATION COUNCIL
1331 G Street, NW, Suite 200
Washington, D.C. 20005
(202) 507-7512
(202) 742-5619 (fax)

COMPLAINT—CLASS ACTION FOR
DECLARATORY AND INJUNCTIVE RELIEF - 19