Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Juweiya Abdiaziz ALI; A.F.A., a minor; Reema Khaled DAHMAN; G.E., a minor; Jaffer Akhlaq HUSSAIN; Seyedehfatemeh HAMEDANI; Olad Issa OMAR; Faduma Olad ISSA; F.O.I., a minor; and S.O.I., a minor; on behalf of themselves as individuals and on behalf of others similarly situated, | Case No. 2:17-cv-00135-JLR<br><br>**PLAINTIFFS' SECOND MOTION FOR CLASS CERTIFICATION** |
| Plaintiffs,<br><br>        v. | NOTE ON MOTION CALENDAR:<br>April 7, 2017 |
| Donald TRUMP, President of the United States of America; Jefferson B. SESSIONS, Attorney General of the United States; U.S. DEPARTMENT OF STATE; Rex W. TILLERSON, Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; John F. KELLY, Secretary of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; Lori SCIALABBA, Acting Director of USCIS; CUSTOMS AND BORDER PROTECTION; Kevin K. McALEENAN, Acting Commissioner of CBP; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE; Michael DEMPSEY, Acting Director of National Intelligence, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

# I.    INTRODUCTION

Plaintiffs and prospective class members are U.S. citizens, lawful permanent residents (LPRs), and U.S.-based business entities who have petitioned for immigrant visas for family members and employees, and nationals of six predominantly Muslim countries who are the beneficiaries of those petitions. They seek to be reunited in the United States, but are indefinitely barred from doing so by Executive Order 13780, 82 Fed. Reg. 13209 (Mar. 9, 2017), signed by Defendant Trump on March 6, 2017.

Before signing Executive Order 13780 (EO2), Defendant Trump issued Executive Order 13769 (EO1), 82 Fed. Reg. 8977 (Feb. 1, 2017), on January 27, 2017. EO1 ordered the immediate suspension of entry of individuals from Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen into the United States. EO1 caused chaos and wreaked havoc in the lives of many affected individuals, including Plaintiffs and proposed class members: Defendants stopped adjudicating and issuing immigrant visas to them, refused to honor the immigrant visas already issued, and, in fact, revoked all properly issued visas en masse. *See* Amended Complaint, Dkt. 52 ¶¶54-56; Dkt. 9 at 18-22 (discussing irreparable harm to affected individuals). It was only after this Court, on February 3, 2017, issued injunctive relief in *Washington v. Trump*, No. 2:17-cv-141-JLR (W.D. Wash.), that Defendants temporarily ceased their unlawful conduct.

In response to that order, and the subsequent opinion of the Ninth Circuit Court of Appeals affirming it, *Washington v. Trump*, 847 F.3d 1151, 2017 U.S. App. LEXIS 2369 (9th Cir. 2017), Defendants announced they would rescind the original executive order and issue a new one. EO2 announces that as of its effective date—March 16, 2017—it will revoke and replace EO1. *See* EO2 §§13, 14. EO2 continues the unlawful and unconstitutional policies initiated in EO1. Subject to exceptions not relevant here, Sections 1(f), 2(c), and 3 of EO2

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

prohibit the entry of individuals from Iran, Libya, Somalia, Sudan, Syria, and Yemen into the United States if they are outside of the United States on March 16, 2017, did not have a valid visa on the date EO1 was signed, and do not have one on March 16, 2017. Like EO1, EO2 provides for an initial 90-day suspension, EO2 §2(c), but also contemplates an ongoing and indefinite suspension on the entry of those nationals into the United States, subject to future determinations of the Secretary of Homeland Security in consultation with the Secretary of State and the Attorney General, EO2 §2(e). The effect of these provisions is to reinstate the unlawful nationality and religion based suspension of immigrant visa adjudications temporarily halted by the TRO in *Washington* for an indefinite period of time. EO2, like its predecessor, violates Defendants' non-discrimination obligations under the Immigration and Nationality Act (INA). It also violates Plaintiffs' and proposed class members' Fifth Amendments rights to due process under the law, including its guarantee of equal protection under the law, and the First Amendment prohibition against laws regarding the establishment of religion.

Plaintiffs and proposed class members have followed the rigorous immigrant visa process. Many, including Plaintiffs, did so with the goal of reuniting with family members in the United States. However, EO2 bans those who are beneficiaries of immigrant visa petitions from entering the country and precludes the Department of State from issuing visas, effectively suspending the adjudication of immigrant visa applications for all nationals of any of the six designated countries. It thereby blocks Plaintiffs and proposed class members from making otherwise lawful entries into the United States and deprives those who lawfully filed family-based petitions and immigrant visa applications of the right to live together as families. They suffer ongoing daily harm as they are further separated from families or employment, and are unaware when, if ever, they will be permitted to be reunited.

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          2 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

Despite having a clear duty not to discriminate based on "nationality, place of birth, or place of residence" in issuing immigrant visas, 8 U.S.C. § 1152(a)(1)(A), Defendants have in fact created nationality-based guidance that targets nationals of these six predominantly Muslim countries. To prevent ongoing and future harm, Plaintiffs seek declaratory and injunctive relief from such unlawful executive action.

The questions presented in this case—whether Defendants have violated their statutory and constitutional duty not to discriminate in adjudicating, issuing, and honoring immigrant visas—can and should be resolved on a class-wide basis. The proposed class, moreover, satisfies the requirements set forth in Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs request that the Court certify the following class, with all named Plaintiffs as class representatives:

> All nationals of countries designated by Section 2 of Executive Order 13780 (currently Iran, Libya, Syria, Somalia, Sudan, and Yemen), who have applied for or will apply for an immigrant visa and the visa petitioners for those nationals; whose visa application adjudication has been or will be suspended or denied, or who have been or will be denied the ability to seek entry into and/or enter the United States, on the basis of Executive Order 13780.

Plaintiffs seek declaratory and injunctive relief on behalf of the class, requiring the Court to declare the EOs are contrary to the INA and the Constitution, halt their application, and order Defendants to resume adjudicating, issuing, and honoring Plaintiffs' immigrant visas.

## II.     BACKGROUND

### A. Plaintiffs' Legal Claims

Although the Court need not engage in "an in-depth examination of the underlying merits" at this stage, it may analyze the merits to the extent necessary to determine the propriety of class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-53 (2011). For that reason, Plaintiffs

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          3 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

provide a brief summary of their merits claims here. *See also* Dkt. 52 ¶¶ 172-194; Dkt. 53 at § III.B.2.

The named Plaintiffs are two U.S. citizens, two LPRs, and six nationals of predominantly Muslim countries who seek to be reunited and live as families in the United States. Like thousands before them, they have diligently pursued the lengthy and demanding immigrant visa process, which entails, inter alia, filing immigrant visa petitions and immigrant visa applications, paying hundreds, if not thousands, of dollars in filing and related fees, undergoing security screenings and medical examinations, and attending interviews before a consular officer. However, the unlawful and discriminatory executive orders issued by Defendant Trump on January 27 and March 6 have shattered their prospects for being reunited in the United States, and well as the reunification prospects of the scores of similarly situated families and individuals they seek to represent through this action.

The Immigration and Nationality Act of 1965 enshrined the principle of nondiscrimination into the immigration laws, providing that "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence." 8 U.S.C. § 1152(a)(1)(A). This bedrock of nondiscrimination was enacted to root out the discriminatory national origin quota system—in place between 1924 and 1965—that restricted immigration on the basis of national origin. *See Li v. Renaud*, 654 F.3d 376, 377 (2d Cir. 2011) (summarizing the history of the national origin quota system). Under that system, immigration from countries outside Northern and Western Europe was highly restricted, and immigration from Asia and Africa was essentially barred.

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          4 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

By the civil rights era, this system was openly under attack by members of Congress as deeply flawed and racist. *See, e.g.*, *Immigration and Nationality Act: Hearing on H.R. 7919 before Subcomm. No. 1 of the H. Comm. on the Judiciary*, 88th Cong. 208 (1964) (testimony of Rep. Harold Ryan) ("It is unfair—it is unjust—it is pure discrimination for us to stamp a 'second best' rating on any individual because of his birthplace."); *id.* (testimony of Rep. William Barrett) ("It is perhaps unnecessary for me to reiterate the well-known fact that the national origins quota system . . . is based upon an infamous lie."). Thus, "[i]n 1965, concerned about discrimination on the basis of 'race, sex, nationality, place of birth, or place of residence,' Congress repealed the national origins quota system." *Li*, 654 F.3d at 377; *see also* S. REP. 89-748, 1965 U.S.C.C.A.N. 3328, 3329 (1965) (noting that the "primary objective" of the 1965 Act was "the abolishment of the national origins quota system").

EO2, like EO1, directly violates 8 U.S.C. § 1152(a)(1)(A) by *requiring* discrimination in the adjudication and issuance of immigrant visas "because of the person's race, sex, nationality, place of birth, or place of residence." The only circuit court to have analyzed § 1152(a)(1)(A) found that the statute was unambiguous and that national origin discrimination is impermissible. *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*, 45 F.3d 469 (D.C. Cir. 1995), *abrogated on other grounds*, *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*, 104 F.3d 1349 (D.C. Cir. 1997) *See also Haitian Refugee Ctr. v. Civiletti*, 503 F. Supp. 442, 453 (S.D. Fla. 1980) ("8 U.S.C. § 1152(a)(1)(A) manifested Congressional recognition that the maturing attitudes of our nation made discrimination on [the listed] bases improper. In the face of such a decision by Congress, [the former Immigration and Naturalization Service] has no authority to discriminate on the basis of national origin or race . . . ."). Therefore, the EOs are unlawful on their face, as Congress

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          5 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

barred national-origin discrimination in the issuance of immigrant visas. *See* 8 U.S.C. § 1152(a)(1)(A).

Defendants' discriminatory actions also violate Plaintiffs' right to equal protection under the Due Process Clause of the Fifth Amendment on the basis of nationality and religion. The Ninth Circuit has affirmed that noncitizens, including those not admitted to the United States, "com[e] within the ambit of the equal protection component of the Due Process Clause." *Kwai Fun Wong v. United States*, 373 F.3d 952, 974 (9th Cir. 2004).

Nationality and religion are both "suspect classifications," and so claims of discrimination on these bases are subject to strict scrutiny, requiring such classifications to be narrowly tailored and justified by a compelling government interest. *See*, *e.g.*, *Graham v. Richardson*, 403 U.S. 365, 371 (1971); *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001); *Christian Sci. Reading Room Jointly Maintained v. City of San Francisco*, 784 F.2d 1010, 1012 (9th Cir. 1986). Plaintiffs need not show that animus against a protected class "was the sole purpose of the challenged action, but only that it was a 'motivating factor.'" *Arce v. Douglas*, 793 F.3d 968, 977 (9th Cir. 2015) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977)).

Although EO2 does not explicitly call for a suspension on the entry of Muslims into the country, President Trump's animus towards Muslims is demonstrated by his own statements made throughout the presidential campaign, which later materialized in EO1. *See* Dkt. 52 ¶¶87-90 (noting Defendant Trump's prior calls for a Muslim ban and for a registry of Muslims in the United States). Defendant Trump expressly linked EO1 to Islam, and his advisors have confirmed that EO1 was intended as a ban on Muslims. *See id.* ¶¶92-95 (noting comments by Defendant Trump linking the EOs to "radical Islamic" terrorism and Rudolph Giuliani that

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          6 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

Defendant Trump asked him to write a "legal" ban on Muslims); *cf. id.* ¶96 (describing EO1's prioritization of refugee claims by religious minorities).

EO2 is the continuation of EO1. The changes included in it—such as exceptions for lawful permanent residents, individuals already admitted or paroled into the country, and dual nationals of a designated country traveling on a passport issued by a non-designated country—were included specifically for the purpose of avoiding legal challenges and not to remedy the underlying intent of the EOs. *See, e.g.*, EO2 §1(c); §1(f) (stating that it "clarifies or refines the approach" to certain issues in EO1, as well as excluding certain categories of noncitizens that "prompted judicial concerns"); Dkt. 52 ¶86 (noting Senior White House Policy Adviser Miller remarked that the new executive order was "intended to address only 'very technical issues' and achieve 'the same basic policy outcome'" as EO1"). Moreover, with regard to the issues in this case, EO2 does not meaningfully differ in substance from EO1. It continues to target six of the seven countries originally included in EO1 and, beginning March 16, 2017, re-institutes the ban on immigrant visa adjudication and issuance found in EO1. In short, EO2 continues the discriminatory treatment of nationals of the six targeted countries found in EO1. No compelling government interest is served by such discriminatory motives.

Even if this Court finds that strict scrutiny does not apply, it must review the decision under rational basis review. *See, e.g. Ram v. I.N.S.*, 243 F.3d 510, 517 (9th Cir. 2001) (evaluating whether "'[l]ine-drawing' decisions made by . . . the President in the context of immigration and naturalization . . . are rationally related to a legitimate government purpose"). "[S]uch review is more searching when a classification adversely affects unpopular groups," such as, in this case, Muslims and individuals from the six affected countries. *See Diaz v. Brewer*, 656 F.3d 1008, 1012 (9th Cir. 2011). EO2, like EO1, is not rationally related to a legitimate purpose. To the

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          7 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

extent it purports to relate to national security concerns, it is fatally over inclusive. *See, e.g.*, Dkt. 52 ¶103 (noting that there were no terrorism-related deaths in the United States between 1975 and 2015 caused by individuals from the six affected countries).

In addition, Defendants' unlawful actions violate the constitutionally protected liberty interest in marriage, family life, and child-rearing for those U.S. citizen and LPR Plaintiffs who filed immigrant visa petitions on behalf of their close family members. *See, e.g.*, *Loving v. Virginia*, 388 U.S. 1, 12 (1967); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-40 (1974); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.); *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008). The Ninth Circuit has confirmed that a U.S. citizen or LPR spouse has the right to bring a due process challenge to the denial of a family member's visa. *See, e.g.*, *Bustamante*, 531 F.3d at 1062 ("Freedom of personal choice in matters of marriage and family life is, of course, one of the liberties protected by the Due Process Clause"); *see also Washington*, 2017 U.S. App. LEXIS 2369 at *24 ("The procedural protections provided by the Fifth Amendment's Due Process Clause are not limited to citizens."). Here, Plaintiffs have endured a rigorous immigrant visa application process, including extensive security screening, which has already separated Plaintiff family members for significant periods. EO2, which retains EO1's provisions unlawfully suspending visa adjudications and issuances, will prolong the separation of these families, perhaps indefinitely. *See* EO2 § 2(e) (permitting indefinite extension if the DHS Secretary determines that an affected country does not share sufficient data with the United States). Due process requires a different result.

Lastly, EO2 violates the Establishment Clause of the First Amendment. Where the government acts to disfavor one religion by, inter alia, placing "burdens . . . on particular denominations," its actions are subject to strict scrutiny. *Larson v. Valente*, 456 U.S. 228, 254

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR                    8 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

(1982). EO2 uniquely disfavors Muslims and burdens Plaintiffs and proposed class members with discriminatory treatment, inability to enter the United States, and stigma, *see, e.g.*, Dkt. 52 ¶¶62-73, 188-189; Dkt. 55 ¶18—based on religious bias—and so Defendants cannot show that it is closely fitted to a compelling government interest.

Even if the Court finds that EO2 does not "grant[] a denominational preference," *Larson*, 456 U.S. at 246, Defendants nonetheless violate the First Amendment, because EO2 cannot survive the three-part test for evaluating compliance with the Establishment Clause set out in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). A government action must "have a secular . . . purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the [action] must not foster 'an excessive government entanglement with religion.'" 403 U.S. at 612-13 (citations omitted). But EO2 does not have a secular purpose and its primary effect inhibits religion. EO2 was intended to mark Muslims for disfavored treatment. No country with a different religious majority, regardless of political instability or lack of cooperation with the U.S. government, is similarly targeted. And, by singling out and barring visa issuance for applicants from six predominantly Muslim nations, EO2's operation will have the intended effect of limiting the ability of Muslims to immigrate to the United States and further stigmatizing Islam as disfavored by the U.S. government.

**B.    Named Plaintiffs' Factual Backgrounds**

*Plaintiffs Juweiya Abdiaziz Ali and her son A.F.A.*

Plaintiff Juweiya Abdiaziz Ali is a 23-year-old U.S. citizen who resides in Washington State. Ms. Ali was born in Somalia and came to the United States as a child. She derived U.S. citizenship on August 31, 2010. On August 12, 2016, Ms. Ali filed a family-based immigrant visa petition (Form I-130) for her son, Plaintiff A.F.A., with USCIS, along with the requisite fee. A.F.A. is a 7-year-old citizen and resident of Somalia, where he lives with his grandmother. On

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

December 21, 2016, USCIS approved the immigrant visa petition Ms. Ali filed on behalf of

A.F.A., and his case was subsequently transferred to the National Visa Center ("NVC") for the

processing of an IR-2 immigrant visa for an unmarried, minor child of a U.S. citizen. On January

17, 2017, the NVC processed Ms. Ali's payment of the requisite filing fees for the immigrant

visa application and the affidavit of support. On January 20, 2017, Ms. Ali electronically

submitted A.F.A.'s immigrant visa application (Form DS-260) and mailed all supporting

documents. When EO1 was issued, Ms. Ali and A.F.A. were waiting for the U.S. embassy to

schedule an immigrant visa interview. EO1 caused A.F.A.'s immigrant visa application

adjudication to be suspended. Although it should have been resumed after this Court enjoined

EO1, now, pursuant to Section 2(c) of EO2, Defendants will, again, suspend the adjudication of

A.F.A.'s immigrant visa application for at least 90 days from the effective date of the order—i.e.,

until June 14, 2017. Pursuant to Section 2(e) of the EO, there is a significant risk that the process

will remain indefinitely suspended, preventing him from entering the United States to join his

mother, Ms. Ali.

### Plaintiffs Reema Khaled Dahman and her son G.E.

Plaintiff Reema Khaled Dahman is a 40-year-old LPR who resides in Washington State.

She is a Syrian citizen who became an LPR on September 18, 2012. On October 19, 2015, Ms.

Dahman filed a family-based immigrant visa petition on behalf of her son, Plaintiff G.E., with

USCIS, along with the requisite filing fee. G.E. is a 16-year-old citizen and resident of Syria,

where he lives with his elderly grandmother. Plaintiff G.E. and his mother have not seen each

other since 2012. On June 1, 2016, USCIS approved the I-130 petition Ms. Dahman filed on

behalf of G.E. USCIS subsequently transferred his case to the NVC for the processing of an F2

immigrant visa, for a minor child of an LPR. On September 22, 2016, the NVC processed Ms.

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR                    10 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

Dahaman's payment of the requisite filing fees for the immigrant visa application and affidavit of support. On December 2, 2016, Ms. Dahman electronically submitted G.E.'s immigrant visa application and e-mailed the NVC all civil documents and her Affidavit of Support (Form I-864). Ms. Dahman and G.E. are currently waiting for the U.S. Embassy in Amman, Jordan to schedule an immigrant visa interview. EO1 caused G.E.'s immigrant visa application adjudication to be suspended. Although it should have been resumed after this Court enjoined EO1, now, pursuant to sections 2(c) of EO2, Defendants will again suspend the adjudication of G.E.'s immigrant visa application until June 14, 2017 at the earliest. Indeed, pursuant to Section 2(e), there is a significant risk that the process will remain indefinitely suspended, preventing him from entering the United States and further prolonging his separation from his mother.

### *Plaintiffs Olad I. Omar, his daughters Faduma O. Issa and F.O.I., and his son S.O.I.*

Plaintiff Olad Issa Omar is a 46-year-old U.S. citizen who resides in Washington State. Mr. Omar was born in Somalia. He entered the U.S. as a refugee. He became a naturalized U.S. citizen on April 5, 2005. On May 23, 2014, Mr. Omar filed a family-based immigrant visa petition (Form I-130) for each of his three children, Plaintiff Faduma Olad Issa, Plaintiff F.O.I, and Plaintiff S.O.I., with USCIS, along with the requisite fee. Plaintiff Issa is a 19-year-old citizen of Somalia and resident of Kenya. Plaintiff F.O.I. is a 17-year-old citizen of Somalia and resident of Kenya. Plaintiff S.O.I. is a 12-year-old citizen of Somalia and resident of Kenya. Issa, F.O.I, and S.O.I. were born in a refugee camp in Kenya, but are citizens of Somalia. Issa, as the oldest of the three, is in charge of the care of F.O.I and S.O.I. On July 27, 2014, USCIS approved the immigrant visa petitions Mr. Omar filed on behalf of each of his three children, and each case was transferred to the NVC for the adjudication of an IR-2 immigrant visa for an unmarried, minor child of a U.S. citizen. On October 24, 2016, Issa,

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          11 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

F.O.I, and S.O.I. completed their medical examination, and all three were scheduled to attend an immigrant visa interview at the U.S. consulate in Nairobi, Kenya in November 2016. Their interview was cancelled, but Issa, F.O.I, and S.O.I. were then scheduled to return for an immigrant visa interview on March 20, 2017. On January 28, 2017, a day after EO1 was issued, Plaintiff Omar received an email cancelling those interviews. After this Court enjoined EO1, Mr. Omar was able to schedule, for the third time, an immigrant visa interview for his children. Plaintiffs Issa, F.O.I, and S.O.I are now scheduled and plan to attend an immigrant visa interview on March 13, 2017. Pursuant to section 2(c) of EO2, Defendants will again suspend the adjudication of Issa, F.O.I, and S.O.I.'s immigrant visa applications until June 14, 2017 at the earliest. Pursuant to Section 2(e), there is a significant risk that the adjudication will remain indefinitely suspended, preventing them from entering the United States and further prolonging their separation from their father.

### *Plaintiffs Jaffer Akhlaq Hussain and his wife Seyedehfatemeh Hamedani*

Plaintiff Jaffer Akhlaq Hussain is a 36-year-old lawful permanent resident of the United States who resides in New Jersey. He is a software developer. Mr. Hussain was born in Pakistan, and came to the United States in 1999 as an F-1 student. He received a Bachelor of Science in Electrical Engineering and a master's degree. He was granted a change of status to H-1B on October 1, 2008. He became a permanent resident of the United States on October 2, 2013. On April 14, 2015, Mr. Hussain filed a family-based immigrant visa petition on behalf of his wife, Seyedehfatemeh Hamedani, with USCIS, along with the requisite filing fee. Plaintiff Hamedani is a 31-year-old citizen and resident of Iran, where she lives with the couple's eight-month old son, E.S. On October 13, 2015, USCIS approved the I-130 petition Mr. Hussain filed on behalf of his wife, Plaintiff Hamedi, and the petition was subsequently transferred to the

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          12 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

NVC for the adjudication of an immigrant visa as the spouse of a permanent resident (F2A). E.S. was born in Iran, after the approval of the I-130 petition. On January 20, 2016, the NVC processed Mr. Hussain's payment for the requisite fee for Plaintiff Hamedi's immigrant visa application and affidavit of support. On October 28, 2016, Mr. Hussain informed the NVC that his son, E.S., had been born and the NVC processed and additional requisite fee, on November 17, 2016, for the immigrant visa application for the baby as derivative of Plaintiff Hamedi. Under Iranian and Pakistani law, E.S. is a citizen of Pakistan because his father, Mr. Hussain, is a citizen of Pakistan. Plaintiff Hamedi electronically submitted her immigrant visa application on November 27, 2016. On December 16, 2016, Plaintiff Hussain electronically submitted E.S.'s immigrant visa application. Mr. Hussain, Ms. Hamedi, and their minor son are currently waiting for the U.S. embassy in Abu Dhabi, United Arab Emirates to schedule an immigrant visa interview. EO1 caused the adjudication of the immigrant visa applications of Ms. Hamedi and, by extension, E.S., to be suspended. Although it should have been resumed after this Court enjoined EO1, now, pursuant to section 2(c) of EO2, Defendants will again suspend the adjudication of their immigrant visa applications until June 14, 2017 at the earliest. Pursuant to Section 2(e), there is significant risk that the process will remain indefinitely suspended, preventing Plaintiff Hamedi and E.S. from entering the United States and further prolonging their separation from Mr. Hussain.

### III.  THE COURT SHOULD CERTIFY THE CLASS.

The statutory and constitutional violations Plaintiffs assert have tremendous adverse consequences. Defendants' unilateral and discriminatory halt to immigrant visa adjudications and issuance for nationals of certain countries prevents Plaintiffs from reuniting with their family members, perhaps indefinitely. It prevents them from accessing important professional

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR     13 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

opportunities and engaging in lucrative business ventures. Plaintiffs seek certification of the aforementioned class under Rule 23(b)(2), to enjoin Defendants' unlawful policies and practices.

Courts in the Ninth Circuit routinely certify classes challenging the adequacy of policies and procedures under the immigration laws. *See, e.g.*, *Costelo v. Chertoff*, 258 F.R.D. 600 (C.D. Cal. 2009) (certifying class of "[p]arents who have filed an immigrant visa petition who face separation from their children as a result of the Defendants [sic] failure to act"), *aff'd Cuellar de Osorio v. Mayorkas*, 656 F.3d 954 (9th Cir. 2011), *rev'd on other grounds*, *Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191 (2014); *Hootkins v. Chertoff*, No. CV 07-5696, 2009 WL 57031 (C.D. Cal. Jan. 6, 2009) (certifying circuit-wide class of "[a]ll beneficiaries of immediate relative petitions whose petitioning relatives died prior to beneficiaries' adjudication and approval of lawful permanent resident status"); *Mendez Rojas v. Johnson*, No. 2:16-cv-1024-RSM, ECF No. 37 (W.D. Wash. Jan. 10, 2017) (certifying two nationwide classes of asylum seekers challenging defective asylum application procedures); *A.B.T. v. U.S. Citizenship and Immigration Services*, No. C11-2108 RAJ, 2013 WL 5913323 (W.D. Wash. Nov. 4, 2013) (certifying nationwide class and approving settlement amending practices by the Executive Office for Immigration Review and USCIS that precluded asylum applicants from receiving employment authorization); *Roshandel v. Chertoff*, 554 F. Supp. 2d 1194 (W.D. Wash. 2008) (certifying district-wide class of delayed naturalization cases); *Gonzales v. U.S. Dept. of Homeland Sec.*, 239 F.R.D. 620 (W.D. Wash. 2006) (certifying circuit-wide class challenging USCIS policy contradicting binding precedent), *preliminary injunction vacated*, 508 F.3d 1227 (9th Cir. 2007) (establishing new rule but not addressing class certification); *Santillan v. Ashcroft*, No. C 04–2686, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) (certifying nationwide class of lawful permanent residents challenging delays in receiving documentation of their status); *Barahona-Gomez v. Reno*, 236

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR                14 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

F.3d 1115 (9th Cir. 2001) (addressing jurisdiction in certified circuit-wide class action challenging unlawful immigration directives issued by EOIR); *Gorbach v. Reno*, 181 F.R.D. 642 (W.D. Wash. 1998), *aff'd on other grounds*, 219 F.3d 1087 (9th Cir. 2000) (en banc) (certifying nationwide class of persons challenging validity of administrative denaturalization proceedings); *Gete v. INS*, 121 F.3d 1285 (9th Cir. 1997) (vacating district court's denial of class certification in case challenging inadequate notice and standards in INS vehicle forfeiture procedure); *Walters v. Reno*, No. C94–1204C, 1996 WL 897662 (W.D. Wash. 1996), *aff'd*, 145 F.3d 1032 (9th Cir. 1998), *cert. denied*, *Reno v. Walters*, 526 U.S. 1003 (1999) (certifying nationwide class of individuals challenging adequacy of notice in document fraud immigration cases).

Certification of such classes is consistent with Rule 23(b)(2). The rule was intended to "facilitate the bringing of class actions in the civil-rights area," 7AA WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1775, at 71 (3d ed. 2005), especially those—like the present case—seeking declaratory or injunctive relief. This rationale applies with particular force to civil rights suits like this one, where, absent class certification, there likely will be no opportunity for the vast majority of proposed class members to seek redress for the legal claims at issue. Moreover, the core issues here, like the class actions cited above, involve questions of law, rather than questions of fact, and are thereby well suited for resolution on a class-wide basis. *See*, *e.g.*, *Unthaksinkun v. Porter*, No. C11-0588JLR, 2011 WL 4502050, at *15 (W.D. Wash. Sept. 28, 2011) (concluding that since all class members were subject to the same notice process, its ruling as to the legal sufficiency of the process "would apply equally to all class members").

In reviewing whether to certify a nationwide class, courts consider whether (1) there are similar cases currently pending in other jurisdictions, and (2) the plaintiffs are challenging a nationwide policy or practice. *See*, *e.g.*, *Arnott v. U.S. Citizenship & Immigration Servs.*, 290

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR                    15 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

F.R.D. 579, 589 (C.D. Cal. 2012); *Clark v. Astrue*, 274 F.R.D. 462, 471 (S.D.N.Y. 2011). Many lawsuits emerged challenging different elements of EO1, including the lawsuit filed on behalf of the state of Washington. The instant case, however, focuses exclusively on those who are in the process of applying immigrant visas abroad (as opposed to those dealing with nonimmigrant visa applicants or refugees). Nor does it include habeas claims. There are no other classes certified that have addressed the issues presented here. Nationwide certification, moreover, is especially appropriate in cases challenging immigration policies and practices, given that immigration policy is based on uniform, federal law. Further, nationwide certification is required in this case in order to effectuate Congress's intent to eliminate national origin discrimination in the issuance of immigrant visas by the federal government.

Additionally, it would be unworkable to limit the scope of certification to anything but a nationwide class. The proposed class consists of individuals residing throughout the United States and in countries around the world. Thus, any challenge to Defendants' discriminatory and unlawful suspension of immigrant visa adjudication and issuance must apply to the entire nation. Certification that is more limited in scope would result in Defendants treating affected individuals differently by virtue of their location—an arbitrary and unjust result. *See Gorbach*, 181 F.R.D. at 644 (finding certification of a nationwide class particularly fitting because "anything less that [sic] a nationwide class would result in an anomalous situation allowing the INS to pursue denaturalization proceedings against some citizens, but not others, depending on which district they reside in").

**A.** **This Action Satisfies the Class Certification Requirements of Rule 23(a).**

**1.** **The Proposed Class Members Are so Numerous That Joinder Is Impracticable.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Est., Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). No fixed number of class members is required. *Perez-Funez v. District Director, Immigration & Naturalization Service*, 611 F. Supp. 990, 995 (C.D. Cal. 1984). Courts generally find this requirement is satisfied even when relatively few class members are involved. *See, e.g.*, *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (class of 39 sufficient), *vacated on other grounds*, 459 U.S. 810 (1982); *Ark. Educ. Ass'n v. Board Of Educ. Of Portland, Ark. School Dist.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (class of 17 sufficient); *McCluskey v. Trs. Of Red Dot Corp. Employee Stock Ownership Plan & Trust*, 268 F.R.D. 670, 674-76 (W.D. Wash. 2010) (class of 27 sufficient).

The proposed class is numerous. According to Defendant State Department's own statistics, 28,144 immigrant visas were issued to immigrants from the six countries included in EO2 in FY 2016 (7,727 from Iran, 383 from Libya, 1,797 from Somalia, 2,606 from Sudan, 2,633 from Syria, and 12,998 from Yemen).[1] The majority of these visas were the result of family-based immigrant petitions, demonstrating that there are thousands of U.S. citizens and LPR visa petitioners affected by the EOs.[2] Indeed, over the last decade, more than 500,000 nationals of the affected countries have been granted LPR status.[3] Moreover, five days after EO1 was issued, Defendant CBP reported having prevented 940 individuals, many of whom are

---

[1] U.S. STATE DEP'T, *Immigrant Visas Issued (by Foreign State of Chargeability or Place of Birth): Fiscal Year 2016* (2016), *available at* https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2016AnnualReport/FY16AnnualReport-TableIII.pdf (last visited Feb. 1, 2017).

[2] *Id.*

[3] Marcelo Rochabrun, *Trump Order Will Block 500,000 Legal U.S. Residents From Returning to America From Trips Abroad*, PROPUBLIC.ORG (Jan. 28, 2017), *available at* https://www.propublica.org/article/trump-executive-order-could-block-legal-residents-from-returning-to-america (last visited Feb. 1, 2017).

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          17 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

immigrant visa holders, from boarding flights to the United States.[4] Therefore, at the very least, the proposed class encompasses thousands of U.S. citizens, LPRs, and their family members, as well as employers and their employee beneficiaries of immigrant visa petitions. *Cf. Ali*, 213 F.R.D. at 408 (noting that "the Court does not need to know the exact size of the putative class, 'so long as general knowledge and common sense indicate that it is large'" (quoting *Perez-Funez*, 611 F. Supp. at 995)); Newberg on Class Actions § 3:13 (noting that "it is well settled that a plaintiff need not allege the exact number or specific identity of proposed class members").

Numerosity is not a close question here, but even were it so, the Court should certify the class. *See Stewart v. Associates Consumer Discount Co.*, 183 F.R.D. 189, 194 (E.D. Pa. 1998) ("[W]here the numerosity question is a close one, the trial court should find that numerosity exists, since the court has the option to decertify the class later pursuant to Rule 23(c)(1)."). Defendants, not Plaintiffs, are in possession of the precise number of proposed class members, but Plaintiffs nonetheless have demonstrated that the number of current and future class members would make their joinder impracticable, making class certification appropriate.

### 2. The Class Presents Common Questions of Law and Fact.

Rule 23(a)(2) requires that there be questions of law or fact that are common to the class. "'[A]ll questions of fact and law need not be common'" to satisfy the commonality requirement, however. *Ellis*, 657 F.3d at 981 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). One shared legal issue can suffice. *See, e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (2009) ("[T]he commonality requirements asks [sic] us to look only for some shared legal issue or a common core of facts.").

---

[4]    CUSTOMS AND BORDER PROTECTION, *Protecting the Nation from Foreign Terrorist Entry into the United States, available at* https://www.cbp.gov/border-security/protecting-nation-foreign-terrorist-entry-united-states (last visited Feb. 1, 2017).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 564 U.S. at 349-50 (citation omitted). To establish the existence of a common question of law, the putative class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Thus, "[w]hat matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation marks and citation omitted).

The commonality standard is more liberal in civil rights suits "challeng[ing] a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). "[C]lass suits for injunctive or declaratory relief," like this case, "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1763 at 226.

In the instant case, the proposed class members allege common harms: the unlawful and discriminatory suspension of immigrant visa adjudication and refusal to honor facially valid visas when the visa holders attempt to enter the United States. For many class members, these harms are compounded by an interference with their right to live as families in the United States. For others, they are also accompanied by an interference with their employment prospects, future livelihood, and business ventures.

These harms, moreover, are rooted in a common core of facts: the EOs and their application to immigrant visa petitions and applications. All class members are or will be

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR                    19 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

petitioners for or beneficiaries of an immigrant visa petition filed for an individual from one of the six currently affected countries. Further, all of the putative class members make the same legal claims—that the EOs violate the INA, which prevents nationality-based discrimination in the issuance of immigrant visas, as well as their constitutionally protected rights to due process, equal protection, and freedom from government establishment of religion. *See* Dkt. 52 ¶¶ 166, 172-194.

Factual variations as to, for example, the manner in which the EOs affect specific named Plaintiffs are insufficient to defeat commonality. This case turns on the existence of a uniform policy, first articulated in Section 3 of EO1 and reiterated in Section 2 of EO2, which applies equally to all class members regardless of any factual differences. Courts have affirmed that such factual questions are well-suited to resolution on a class-wide basis. *See, e.g.*, *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014) (reversing denial of class certification motion because movants had "identified a single, well-enunciated, uniform policy" that was allegedly responsible for the harms suffered by the class).

Defendants may argue that the existence of a case-by-case waiver, EO2 §3(c), makes the individual factual circumstances of named Plaintiffs and proposed class members relevant to the questions at issue here, undermining commonality. However, the fact that *some* class members *may* benefit from a waiver that will allegedly be granted on a case-by-case, *discretionary* basis does not undermine the fact that the unlawful suspension of immigration visa application adjudication will be applied to *all* named Plaintiffs and proposed class members. That a remedy for being subjected to that unlawful suspension might subsequently be afforded to some members of the class cannot defeat commonality. *Cf. Walters*, 145 F.3d at 1045-46 ("[I]t would be 'a twisted result' to permit an administrative agency to avoid nationwide litigation that

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR                    20 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

challenges the constitutionality of its general practices simply by pointing to minor variations in procedure …, particularly because the variations were designed to avoid the precise constitutional inadequacies identified by the plaintiffs in this action.")

In sum, the questions of law presented here are particularly well-suited to resolution on a class-wide basis, as "the court must decide only once whether the application" of Defendants' policies and practices "does or does not violate" the law. *Troy v. Kehe Food Distribs., Inc.*, 276 F.R.D. 642, 654 (W.D. Wash. 2011); *see also LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) (holding that the constitutionality of an INS procedure "plainly" created common questions of law and fact).[5] Because all proposed class members raise the same set of common questions, all of which can be remedied in a single stroke by addressing the legal claims presented, this Court should find the commonality requirement satisfied here.

### 3. The Claims of the Named Plaintiffs Are Typical of the Claims of the Members of the Proposed Class.

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class." To establish typicality, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (citation omitted). Factual differences among class members do not defeat typicality in a case dealing with a uniform policy or practice, provided that "the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 869; *see also Unthaksinkun*, 2011 WL 4502050 at *13 (same); *La Duke*, 762 F.2d at 1332 ("The minor differences in the manner in which the representative's Fourth Amendment rights were

---

[5]    As such, resolution on a class-wide basis also serves a purpose behind the commonality doctrine: practical and efficient case management. *Rodriguez,* 591 F.3d at 1122.

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          21 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

violated does not render their claims atypical of those of the class."); *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims.") (citation omitted).

Here, the claims of the named Plaintiffs are typical of the claims of the proposed class members. Like the named Plaintiffs, each proposed class member has diligently pursued the immigrant visa process but been prevented from completing it due to the EOs. Class representatives include individuals affected by EO2 at various stages of the immigrant process before entering the United States, all of whom challenge the legality of EOs under the INA, the Due Process Clause, and the Establishment Clause. Because the named Plaintiffs and proposed class members raise common legal claims and are united in their interest and injury, the element of typicality is met.

### 4. The Named Plaintiffs Will Adequately Protect the Interests of the Proposed Class Members, and Counsel Are Qualified to Litigate this Action.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Walters*, 145 F.3d at 1046 (citations omitted).

#### a. *Named Plaintiffs*

The named Plaintiffs each seek relief on behalf of the class as a whole and have no interest antagonistic to those of other class members; they will thus fairly and adequately protect the interests of the class members they seek to represent. Their mutual goal is to declare

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          22 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

Defendants' challenged EOs unlawful and to obtain declaratory and injunctive relief that would not only cure this illegality but remedy the ongoing harm to all class members. They thus seek a remedy for the same injuries, which could be addressed by halting the application, enforcement, and consequences of EO2. Thus, the interests of the representatives and of the class members are aligned.

### b. *Counsel*

Plaintiffs' counsel are adequate. Counsel are considered qualified when they can establish their experience in previous class actions and cases involving the same field of law. *See Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984); *Marcus v. Heckler*, 620 F. Supp. 1218, 1223-24 (N.D. Ill. 1985); *Adams v. Califano*, 474 F. Supp. 974, 979 (D. Md. 1979). Plaintiffs are represented by attorneys from the Northwest Immigrant Rights Project, the National Immigration Project of the National Lawyers Guild, and the American Immigration Council. Counsel have a demonstrated commitment to protecting the rights and interests of noncitizens and have considerable experience in handling complex and class action litigation in the immigration field. *See* Dkts. 4-7 (declarations of Matt Adams, Mary Kenney, Trina Realmuto, and Melissa Crow). These attorneys have represented numerous classes of immigrants in actions that successfully obtained class relief. Plaintiffs' counsel will zealously represent both named and absent class members.

### B. This Action Also Satisfies the Requirements of Rule 23(b)(2).

Federal Rule of Civil Procedure 23(b)(2), under which Plaintiffs seek certification, requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class." It also "requires 'that the primary relief sought is declaratory or injunctive.'" *Rodriguez*, 591 F.3d at 1125 (citation omitted). "The rule does not require [the court] to examine the viability or bases of class members' claims for declaratory and injunctive

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          23 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Id.* This suit satisfies the requirements of Rule 23(b)(2), as Defendants have a nationwide policy that is injurious to the rights and interests of the named Plaintiffs and proposed class members.

Defendants' unlawful and discriminatory EOs are preventing the named Plaintiffs and proposed class members from completing the immigrant visa process. "The only appropriate remedy, if these allegations are established, is declaratory judgment and final injunctive relief." *Walter*, 1996 WL 897662 at *7. Defendants' actions in this case violate Plaintiffs' statutory and constitutional rights. By their very language, the EOs apply across the board to all Plaintiffs— Defendants have thus unquestionably acted "on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Rodriguez*, 591 F.3d at 1126 (finding that class of noncitizens detained during immigration proceedings met Rule 23(b)(2) criteria because "all class members' [sic] seek the exact same relief as a matter of statutory or, in the alternative, constitutional right"); *see also Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (holding that Rule 23(b)(2) "requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole"). Hence, the requirements of Rule 23(b)(2) are met.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant this motion and enter the enclosed proposed certification order.

Dated this 10th day of March, 2017.

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          24 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

Respectfully submitted,

s/*Matt Adams*
Matt Adams, WSBA No. 28287

s/*Glenda Aldana*
Glenda M. Aldana Madrid, WSBA No. 46987

s/*Maria Lucia Chavez*
Maria Lucia Chavez, WSBA No. 43826

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400 Seattle, WA 98104 (206) 957-8611
(206) 587-4025 (fax)

s/*Trina Realmuto*
Trina Realmuto, *pro hac vice*

s/*Kristin Macleod-Ball*
Kristin Macleod-Ball, *pro hac vice*

NATIONAL IMMIGRATION PROJECT
 OF THE NATIONAL LAWYERS GUILD
14 Beacon Street, Suite 602
Boston, MA 02108
(617) 227-9727
(617) 227-5495 (fax)

s/*Mary Kenney*
Mary Kenney, *pro hac vice*

s/*Aaron Reichlin-Melnick*
Aaron Reichlin-Melnick, *pro hac vice*

s/*Melissa Crow*
Melissa Crow, *pro hac vice*

AMERICAN IMMIGRATION COUNCIL
1331 G Street, NW, Suite 200
Washington, D.C. 20005
(202) 507-7512
(202) 742-5619 (fax)

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          25 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 10, 2017, I caused the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for all Defendants. With respect to new Defendants U.S. Customs and Border Protection and the Attorney General, current counsel for Defendants, Stacey Young, has advised that she will not accept service for the agency. Therefore, along with a copy of the amended complaint and second motion for class certification, I arranged for ***personal delivery*** of these documents and corresponding proposed orders to:

United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271

as well as the mailing of these documents by ***U.S. certified mail, return receipt requested,*** to:

U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

and

U.S. Customs and Border Protection
Office of the Chief Counsel
1300 Pennsylvania Avenue, N.W.
Washington, DC 20229

Executed in Seattle, Washington, on March 10, 2017.

*s/ Matt Adams*
Matt Adams, WSBA No. 28287
NORTHWEST IMMIGRANT RIGHTS PROJECT

PLAINTIFFS' SECOND MOT.
FOR CLASS CERTIFICATION
Case No 2:17-cv-00135-JLR          26 of 27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611