UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUWEIYA ABDIAZIZ ALI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, et al., <br><br> Defendants. | CASE NO. C17-0135JLR <br><br> ORDER STAYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF |

## I. INTRODUCTION

Before the court is Plaintiffs' motion for a temporary restraining order ("TRO") and preliminary injunctive relief.[1] (TRO Mot. (Dkt. # 53).) Plaintiffs seek an injunction

---

[1] Plaintiff Juweiya Abddiaziz Ali is a United States citizen, who resides in Seattle. (Am. Compl. (Dkt. # 52) ¶ 11.) Plaintiff A.F.A. is her seven-year-old son, and he is citizen and resident of Somalia. (Id. ¶ 12.) Plaintiff Reema Khaled Dahmen is a lawful permanent resident of the U.S., residing in Seattle, and a Syrian citizen. (Id. ¶ 13.) Plaintiff G.E. is Ms. Dahmen's 16-year-old son, and he is citizen and resident of Syria. (Id. ¶ 14.) Plaintiff Jaffer Akhlaq Hussain is a lawful permanent resident of the United States, residing in Parlin, New Jersey, and a citizen of Pakistan. (Id. ¶ 15.) Plaintiff Seyedehfatemeh Hamedani is his wife. (Id. ¶ 16.) She is a citizen and resident of Iran. (Id.) Plaintiff Olad Issa Omar is a naturalized citizen of the United States, residing in Seattle. (Id. ¶ 17.) Plaintiff Fadma Olad Issa is the 19-year-old

ORDER - 1

of certain provisions Executive Order No. 13,769, entitled "Protecting the Nation for Foreign Terrorist Entry into the United States" ("EO2"). (*See id.*) Specifically, Plaintiffs seek to enjoin those provisions of EO2 that suspends entry into the United States for a minimum of 90 days for nationals of Iran, Libya, Somalia, Sudan, Syria, and Yemen. (*See id.*) Defendants oppose the motion.[2] (Resp. (Dkt. # 71).) On March 15, 2017, the court heard the argument of counsel.[3] (3/15/17 Min. Entry (Dkt. # 78).)

Almost immediately following oral argument concerning Plaintiffs' motion, the court learned that the United States District Court for the District of Hawai'i entered a temporary restraining order in *Hawai'i v. Trump*, No. 17-00050 DKW-KSC (D. Haw.), restraining similar federal defendants from enforcing Sections 2 and 6 of EO2. *See id.*, Dkt. # 219. In addition, on March 16, 2017, the United States District Court for the District of Maryland entered a preliminary injunction in *International Refugee Assistance*

---

daughter of Mr. Omar. (*Id.* ¶ 18.) She was born in Kenya with her two siblings. (*Id.*) Under Kenya's *jus sanguinis* law, she is a citizen of Somalia. (*Id.*) Plaintiff F.O.I. is the 17-year-old daughter of Mr. Omar. (*Id.* ¶ 19.) She was born in Kenya with her two siblings, but under Kenya's *jus sanguinis* law, she is a citizen of Somalia. (*Id.*) Plaintiff S.O.I. is the 12-year-old son of Mr. Omar. (*Id.* ¶ 20.) Under Kenya's *jus sanguinis* law, he is a citizen of Somalia. (*Id.*)

[2] Defendants are President Donald J. Trump, Attorney General of the United States Jefferson B. Sessions, the United States Department of State ("DOS"), Secretary of State Rex W. Tillerson, the United States Department of Homeland Security ("DHS"), Secretary of DHS John F. Kelly, the United States Citizenship and Immigration Services ("USCIS"), Acting Director of USCIS Lori Scialabba, United States Customs and Border Protection ("CBP"), Acting Commissioner of CBP Kevin K. McAleenan, the Office of the Director of National Intelligence, and Acting Director of National Intelligence Michael Dempsey. (Am. Compl. ¶¶ 21-32.)

[3] In addition, the court asked the parties to submit additional memoranda concerning the availability of injunctive relief for a non-certified class. (*See* 3/13/17 Min. Entry (Dkt. # 65).) Both sides filed the requested memoranda. (*See* Plf. Brief (Dkt. # 72); Def. Brief (Dkt. # 70).)

*Project v. Trump*, No. 8:170cv-00361-TDC (D. Md.), enjoining similar federal defendants from enforcing Section 2(c) of EO2. *See id.*, Dkt. ## 149-50.

The court has considered Plaintiffs' motion, Defendants' response, the oral argument of counsel, the relevant portions of the record, and the applicable law. In addition, the court has considered the recent developments in the District Courts of Hawai'i and Maryland. Being fully advised, the court stays Plaintiffs' motion as discussed below.

## II. BACKGROUND

This lawsuit arises out of President Donald J. Trump's recent execution of two Executive Orders regarding immigration. Indeed, numerous suits involving the President's Executive Orders have been filed around the country, and their progression has become intertwined.

On January 27, 2017, President Trump signed Executive Order 13,769, "Protecting the Nation from Foreign Terrorist Entry into the United States," 82 Fed. Reg. 8977 (Feb. 1, 2017) ("EO1"). (*See* Am. Compl. ¶ 3.) EO1 directed a series of changes to the manner in which non-citizens may seek and obtain entry to the United States. (*See generally id.*) Section 3(c) of EO1 proclaimed that the continued entry of immigrants and nonimmigrants from countries referred to in Section 217(a)(12) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1187(a)(12) (i.e., Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen) "would be detrimental to the interests of the United States." (EO1 § 3(c).) EO1 "suspend[ed] entry into the United States, as immigrants and nonimmigrants, of such persons for 90 days from the date of th[e] order." (*Id.*)

On January 27, 2017, the DOS Deputy Assistant Secretary, Bureau of Consular Affairs, issued a cable stating that, upon the request of the DHS and pursuant to EO1, he was revoking all valid immigrant and nonimmigrant visas of nationals from the seven targeted countries, with limited exceptions. (*Id.* ¶ 54.) "The impact of the Executive Order was immediate and widespread." *Washington v. Trump*, 847 F.3d 1151, 1157 (9th Cir. 2017). "It was reported that thousands of visas were immediately canceled, hundreds of travelers with such visas were prevented from boarding airplanes bound for the United States or denied entry on arrival, and some travelers were detained." *Id.*

On February 3, 2017, this court issued a TRO in *Washington v. Trump*, No. C17-0141JLR (W.D. Wash.), Dkt. # 52, enjoining Sections 3(c), 5(a), 5(b), 5(c), and 5(e) of EO1. On February 4, 2017, the defendants appealed the TRO to the Ninth Circuit, and moved to stay this court's order. *Id.*, Dkt. # 53. The Ninth Circuit construed this court's TRO as a preliminary injunction and declined to stay the preliminary injunction pending the defendants' appeal of the order in the Ninth Circuit. (*See* Am. Compl. ¶ 57 (citing *Washington*, 847 F.3d 1151).) On February 9, 2017, the federal district court in Hawai'i stayed proceedings in *Hawai'i v. Trump* while this court's preliminary injunction of EO1 remained in place and pending resolution of the appeal filed by the *Washington v. Trump* defendants in the Ninth Circuit. *See Hawai'i v. Trump*, Dkt. # 32.

On March 6, 2017, President Trump issued EO2, which expressly revokes EO1. *See* EO2 § 13. In addition, Defendants withdrew their appeal of this court's injunction with respect to EO1. *See Washington v. Trump*, Dkt. # 111 (Ninth Circuit order granting the defendants' unopposed motion to voluntarily dismiss appeal). Whereas EO1

1  suspended the entry into the United States of nationals from seven predominantly Muslim
2  countries, EO2 omits Iraq, but continues to suspend the entry of nationals from Iran,
3  Libya, Somalia, Sudan, Syria, and Yemen. (Am. Compl. ¶ 62.)
4      Plaintiffs originally filed this putative class action lawsuit on January 30, 2017,
5  just days after President Trump executed EO1. (*See* Compl. (Dkt. # 1).) On February 6,
6  2017, Plaintiffs filed a motion for a preliminary injunction seeking to enjoin Defendants
7  from enforcing Section 3 of EO1 on a class-wide basis. (*See* PI Mot. (Dkt. # 9).) This
8  motion is now moot because EO2 expressly revoked EO1 effective March 16, 2017.[4] *See*
9  EO2 § 13. On March 10, 2017, four days after President Trump executed EO2, Plaintiffs
10 filed an amended complaint asserting new allegations concerning the harms they have
11 experienced or will experience as a result of EO2. (Am. Compl.) On the same day,
12 Plaintiffs filed a motion for a TRO and preliminary injunctive relief concerning certain
13 provisions of EO2. (*See* TRO Mot.)
14     Meanwhile, following President Trump's issuance of EO2 and the *Washington v.*
15 *Trump* defendants' withdrawal of their appeal in the Ninth Circuit, the federal district
16 court in Hawai'i lifted its stay, and the plaintiffs in that action filed an amended
17 complaint adding allegations concerning EO2 and a TRO motion seeking to enjoin
18 certain aspects of EO2. *Hawai;i v. Trump*, Dkt. ## 59-1, 60-1, 64, 65. The federal
19 district court in Hawai'i enjoined the enforcement of Sections 2 and 6 of EO2 on March
20 15, 2017—shortly after this court heard oral argument and took Plaintiffs' motion for a

---

[4] Although two courts have enjoined parts of EO2, Section 13 of EO2, which revokes EO1, is not enjoined.

1  TRO and preliminary injunctive under advisement in this litigation. *See id.* Dkt., ## 219-
2  20. The federal district court in Maryland followed the federal district court in Hawai'i
3  on March 16, 2017, with its own order enjoining Section 2(c) of EO2. *See Int'l Refugee*
4  *Assistance Project v. Trump*, Dkt. ## 149-50.

5        On March 15, 2017, shortly after the federal district court in Hawai'i entered its
6  order, President Trump vowed in public remarks to appeal the Hawai'i federal district
7  court order "as far as it needs to go, including all the way up to the Supreme Court."
8  Donald J. Trump, Remarks by the President at Make America Great Again Rally (Mar.
9  15, 2017), https://www.whitehouse.gov/the-press-office/2017/03/15/remarks-president-
10 make-america-great-again-rally (last visited Mar. 17, 2017). In addition, on March 16,
11 2017, the President's Press Secretary, Sean Spicer, stated that the President intends to
12 appeal both the court's ruling in *Hawai'i v. Trump*, as well as the court's ruling in
13 *International Refugee Assistance Project v. Trump*, soon. Press Briefing by Press
14 Secretary Sean Spicer, 3/16/17, # 25 (Mar. 16, 2017), https://www.whitehouse.gov/the-
15 press-office/2017/03/16/press-briefing-press-secretary-sean-spicer-3162017-25 (lasted
16 visited Mar. 17, 2017).

17       This court now finds itself in virtually the same position as the federal district
18 court in Hawai'i when that court stayed proceedings while this court's preliminary
19 injunction concerning EO1 was on appeal in the Ninth Circuit. Accordingly, the court
20 *sua sponte* considers whether to stay Plaintiffs' pending TRO motion so long as the
21 nationwide TRO entered in *Hawai'i v. Trump* or a preliminary injunction of equal scope
22 remains in effect.

## III. ANALYSIS

### A. The Court's Authority to Issue a Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The exertion of this power calls for the exercise of sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 255). Courts have the power to consider stays *sua sponte*. *See, e.g., Fed. Home Loan Mortg. Corp. v. Kama*, No. 14-00137 ACK-KSC, 2016 WL 922780, at *8-9 (D. Haw. Mar. 9, 2016) (staying proceedings, *sua sponte*, pending resolution of related cases before the Ninth Circuit because resolution of those cases "w[ould] likely involve an analysis of" obscure issues, thereby "provid[ing] further guidance" to the court with respect to the case in question); *see also S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (noting that district court can enter an order staying discovery *sua sponte*).

The issues involved in the pending proceedings need not be "controlling of the action before the court" for the court to issue a stay. *Leyva*, 593 F.2d at 864. Indeed, where a stay is considered pending the resolution of another action, the court need not find that two cases possess identical issues; a finding that the issues are substantially similar is sufficient to support a stay. *See Landis*, 299 U.S. at 254.

## B. The Factors the Court Considers

In determining whether to grant a motion to stay, "the competing interests [that] will be affected by the granting or refusal to grant a stay must be weighed." *Lockyer*, 398 F.3d at 1110 (citing *CMAX*, 300 F.2d at 268). Those interests include: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* Here, the court finds that these factors weigh in favor of staying the resolution of Plaintiffs' TRO motion so long as the nationwide TRO entered in *Hawai'i v. Trump* or a preliminary injunction of equal scope remains in effect.

### 1. Possible Damage Resulting from a Stay

Ordinarily, Plaintiffs would oppose a stay under these circumstances, and so the considers any damage that may result to Plaintiffs if the court imposes a stay. *Lockyer*, 398 F.3d at 1110. In light of the state of the proceedings in the federal district court in Hawai'i, the court finds that any prejudice caused by a delay in the court's resolution of Plaintiffs' motion will be minimal—if there is any at all. The Federal District Court of Hawai'i's nationwide injunction already provides Plaintiffs the relief they seek in their TRO motion. Accordingly, Plaintiffs will not suffer the type of damage described in *Landis.* 299 U.S. at 255. Further, if circumstances change, such as lifting the TRO or narrowing the scope of the TRO or a subsequent preliminary injunction, Plaintiffs can seek to lift the stay. Based on the speed with which the Ninth Circuit proceeded in

*Washington v. Trump*, the court does not anticipate that a stay will last long. If, however, this assumption proves to be wrong, and the delay causes harm, then again Plaintiffs can seek to lift the stay.

### 2. Possible Hardship or Inequity Resulting from Going Forward

Ordinarily, Defendants would benefit from a stay under these circumstances, and so the court considers any hardship or inequity that might result to them from going forward. *See Lockyer*, 398 F.3d at 1110. Here, there is little possibility of hardship or inequity for Defendants because the parties have already briefed Plaintiffs' TRO motion (*see* TRO Mot.; Resp.), and the court has heard oral argument (*see* 3/15/17 Min. Entry). "[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity" for purposes of a stay. *Lockyer*, 398 F.3d at 1112 (internal quotations omitted). Thus, the court considers this factor to be primarily neutral. However, "hardship or inequity may result to both parties if the [c]ourt does not pause to consider issues . . . [that will be on appeal in the Ninth Circuit] because of the potential for inconsistent rulings and resulting confusion to law enforcement agencies and the public." *Hawai'i v. Trump*, No. CV 17-00050 DKW-KJM, 2017 WL 536826, at *3 (D. Haw. Feb. 9, 2017). Thus, in these unique circumstances, this factor is either neutral or tips somewhat in favor of the stay.

### 3. The Orderly Course of Justice

Last, the court considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay." *CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254-55).

ORDER - 9

Given the significant overlap of issues between this case and *Hawai'i v. Trump*, granting a stay of Plaintiffs' TRO motion while the nationwide injunction remains in place in the court in Hawai'i and pending the outcome of appellate proceedings in that case would facilitate the orderly course of justice. Indeed, the Ninth Circuit's rulings on EO2 in *Hawai'i v. Trump* will likely have significant relevance to—and potentially control—the court's subsequent rulings here.

The Ninth Circuit's opinion in *Washington v. Trump* does not obviate the benefit of waiting for a further rulings in *Hawai'i v. Trump*. The issues involved in *Hawai'i v. Trump* are related to the issues in *Washington v. Trump*, but they are not identical. As this court has previously found, there are significant differences between the provisions, scope, and articulated purposes of EO1 and EO2. *See Washington v. Trump*, Dkt. # 163 at 5-6. The Ninth Circuit's ruling on the defendants' motion to stay this court's preliminary injunction in *Washington v. Trump* with respect to EO1 does not preordain how the Ninth Circuit will rule in *Hawai'i v. Trump* with respect to EO2. Further, because the defendants' dismissed their appeal in *Washington v. Trump*, all of the Ninth Circuit's rulings in that case addressed the defendants' motion to stay this court's preliminary injunction. *See Washington*, 847 F.3d at 1156. The Ninth Circuit never ruled on the direct appeal of this court's preliminary injunction.

Because many of the legal arguments Plaintiffs presented in their TRO motion are likely to be before the Ninth Circuit, the court finds it would waste judicial resources to decide these issues in this forum when guidance from the Ninth Circuit will be available shortly. The more efficient course is to wait for a decision from the Ninth Circuit in

*Hawai'i v. Trump*, which may resolve the primary issues. *See, e.g., Landis*, 299 U.S. at 256 (explaining that even if a decision of the pending case "may not settle every question of fact and law" in suits in other states, "in all likelihood it will settle many and simplify them all."). The court can then resolve any remaining issues in this case with the benefit of the Ninth Circuit's analysis.

Finally, as the Hawai'i federal district court noted when it stayed its proceedings, granting a stay will "also reduce the risk of inconsistent rulings that the appellate courts might then need to disentangle." *Hawai'i*, 2017 WL 536826, at *5. "[W]here significant litigation is likely to take place during the pendency of an appeal," granting a stay is a "means of conserving judicial resources." *Id.* Considerable judicial resources may be wasted "if the appellate court's controlling decision changes the applicable law or the relevant landscape of facts that need to be developed." *Id.*

### 4. Summary of the Factors

The court's evaluation of the relevant factors weighs in favor of imposing a limited stay on these proceedings. The court, in its discretion, stays its consideration of Plaintiffs' TRO motion. No other aspects of this litigation are stayed. The stay on Plaintiffs' TRO motion will remain in place so long as the nationwide TRO or a preliminary injunction of identical scope remains in place in *Hawai'i v. Trump*. This stay will permit the court to conserve its resources and to benefit from any Ninth Circuit rulings in *Hawai'i v. Trump* regarding EO2. Further, "[t]he risk of inconsistent rulings and duplicative litigation" warrants the imposition of the limited stay here, "particularly

1 | where . . . there is an absence of significant harm [or hardship] from granting a stay."
2 | *Hawai'i*, 2017 WL 536826, at *5.

### IV. CONCLUSION

Based on the foregoing analysis, the court STAYS its determination of Plaintiffs' TRO motion (Dkt. # 53). The court DIRECTS the Clerk to remove this motion from its calendar. Should circumstances change such that lifting the stay is warranted, either party may move to lift the stay. If the stay is lifted, the court will rule on Plaintiffs' motion, if appropriate, as soon as practicable. In addition, as indicated in this order, *see supra* at 5, Plaintiffs' original motion for a preliminary injunction related to EO1 is now moot (Dkt. # 9). Accordingly, the court DIRECTS the Clerk to remove this motion from the court's calendar.

Dated this 17 day of March, 2017.

JAMES L. ROBART
United States District Judge